UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
**CHARLES KING, Jr.**,

                Plaintiff,

                - against -

**ANDREW SAUL**, Commissioner of Social Security,

                Defendant.
------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

18-CV-7274 (AMD)

**ANN M. DONNELLY**, United States District Judge:

    The plaintiff appeals the Commissioner of Social Security's decision that he is not disabled for purposes of receiving disability benefits under Title II of the Social Security Act.[1] For the reasons that follow, I grant the plaintiff's motion for judgment on the pleadings, deny the Commissioner's cross-motion, and remand the case for further proceedings.

## BACKGROUND

    The plaintiff, formerly a bus driver with the New York City Transit Authority, was injured in May 2014 when another vehicle hit his bus from behind. (Tr. 111, 314.) Because of his injuries, the plaintiff could not return to work, and applied for worker's compensation. On January 15, 2015, he applied for disability benefits with the accident date as the onset date, alleging disability because of injuries to his neck, right shoulder, back and left hip; he also alleged disability from high blood pressure and diabetes. (Tr. 182, 287-88, 312.) The plaintiff's request was denied on June 19, 2015. (Tr. 185-195.)

---

[1] The plaintiff originally filed this action against Nancy Berryhill. Since Andrew Saul is now the Commissioner of Social Security, he is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

1

On June 28, 2017, Administrative Law Judge ("ALJ") Michelle Allen held a hearing at which a vocational expert and the plaintiff, represented by a lawyer, testified. (Tr. 138-171.) In a September 8, 2017 decision, ALJ Allen denied the plaintiff's disability claim. (Tr. 104-27.) She concluded that the plaintiff had the following severe impairments: "status-post right shoulder surgery," degenerative disc disease of the cervical and lumbar spines with radiculopathy, diabetes, obesity, myocardial infarction and osteoarthritis of the bilateral hips. (Tr. 109.) She concluded that these conditions were severe, but that none of them met or equaled the applicable listings. ALJ Allen found that the plaintiff had the residual functional capacity to perform light work with some limitations. (Tr. 110-22.)

The plaintiff appealed and submitted progress notes from his primary care provider, Dr. Matthew Clarke, who had treated the plaintiff since his 2014 accident, and concluded that the plaintiff had reached his maximum medical improvement and could not "engage in any form of gainful employment, including sedentary work." (Tr. 2, 8-11, 52-55.) The plaintiff also submitted transcripts from his worker's compensation hearing, at which Dr. Clarke and another physician, Dr. Eduardo Alvarez, testified. Dr. Alvarez, a retired orthopedic surgeon employed by the worker's compensation board, examined the plaintiff during the relevant period and concluded that the plaintiff's condition would not improve and that he could do, at most, a reduced range of sedentary work. (Tr. 68-95.) On November 6, 2018, the Appeals Council denied the plaintiff's request for review, finding that the newly submitted evidence "does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2.)

The plaintiff appealed on December 20, 2018. (ECF No. 1.) Both parties moved for judgment on the pleadings. (ECF Nos. 12, 17-19.)

**LEGAL STANDARD**

A district court reviewing a final decision of the Commissioner "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (quotation marks omitted).

The court must defer to the Commissioner's factual findings when they are "supported by substantial evidence," but not "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)) (citations omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Moreover, the district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citations omitted).

**DISCUSSION**

The plaintiff takes issue with the ALJ's RFC determination, arguing that it is not supported by substantial evidence because it does not properly weigh his treating physician's opinions, does not account for new evidence submitted to the Appeals Council, and does not

3

consider all of the plaintiff's conditions.  He also challenges the ALJ's evaluations of the applicable listings.  I agree that remand is appropriate on both grounds.

I. RFC Determination

ALJ Allen concluded that the plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently, could sit for six hours and stand or walk for six hours in an eight-hour workday as long as he could take an hourly break.  (Tr. 110.)  The ALJ also determined that the plaintiff's severe impairments restricted his ability to lift and reach.  (*Id*.)  The plaintiff argues that the ALJ's decision is not supported by substantial evidence and that the opinion of his treating physician, Dr. Matthew Clarke, and the new evidence he submitted to the Appeals Council support a more conservative RFC—of sedentary work or total disability.  I agree that remand is appropriate so that the ALJ can reconsider the weight to accord the treating physician's opinion and to evaluate the newly submitted evidence that she did not have when she made her decision.

"The 'treating physician' rule requires that the opinion of a claimant's treating physician be accorded 'controlling weight' if it is well supported and not inconsistent with other substantial evidence in the record."  *Corporan v. Comm'r of Soc. Sec.*, No. 12-CV-6704, 2015 WL 321832, at *4 (S.D.N.Y. Jan. 23, 2015) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)); *see also Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (summary order).[2]  If the ALJ decides that the treating physician's opinion does not merit controlling weight, she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's

---
[2] The treating physician rule applies because the plaintiff filed his claim before March 27, 2017.  *See* 20 C.F.R. § 404.1527.

opinion." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks and citation omitted); *accord* 20 C.F.R. § 404.1527(c)(2). The factors that the ALJ "must consider" include:

> (i) The frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. § 404.1527(d)(2). Failure to provide "good reasons" for the weight assigned to a treating physician's opinion constitutes grounds for remand. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also Fontanez v. Colvin*, No. 16-CV-01300, 2017 WL 4334127, at *18 (E.D.N.Y. Sept. 28, 2017) (the ALJ's "failure to provide 'good reasons' for not crediting a treating source's opinion is ground for remand.") (internal citations omitted).

Under 20 C.F.R. § 404.1527(a)(2), medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and . . . physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Medical opinions are different than treatment notes or diagnostic tests, which "merely list the symptoms detailed by the [p]laintiff and/or the tests performed by the doctor." *Wider v. Colvin*, 245 F. Supp. 3d 381, 390-91 (E.D.N.Y. 2017); *see also Bailey v. Berryhill*, No. 15-CV-9287, 2017 WL 1102671, at *2 (S.D.N.Y. Mar. 24, 2017) (medical opinions are distinct from "treatment notes documenting [p]laintiff's medical history, describing the results of examinations and medical tests, and describing treatments and treatment plans"). Instead, medical opinions "must reflect a judgment 'with regard to the nature and severity of plaintiff's

5

limitations beyond a mere diagnosis and description of symptoms.'" *Bailey*, 2017 WL 1102671, at *2 (quoting *Merriman v. Comm'r of Soc. Sec.*, No. 15-CV-2413, 2015 WL 5472934, at *20 (S.D.N.Y. Sept. 17, 2015)).

Dr. Matthew Clarke, a family medicine physician, was the plaintiff's primary care provider throughout the relevant period. He began treating the plaintiff after his 2014 accident and continued treating him for the next four years. A week after the plaintiff's accident, Dr. Clarke determined that the plaintiff was eligible for worker's compensation, and that he had pain and limited range of motion in his neck, right shoulder and lower back. MRI imaging showed that the plaintiff had multiple herniated, torn and bulging discs in his lumbar and cervical spine. (Tr. 365-70.) There were degenerative changes, possible cartilage and ligament tears, and mild edema in his right shoulder. (Tr. 369-370.) Nerve conduction tests showed cervical and lumbar radiculopathy as well as bilateral nerve entrapment in both wrists. (Tr. 371-72.) Dr. Clarke prescribed physical therapy and pain medication, and opined that the plaintiff could not return to work because of acute pain, an assessment that remained consistent for the next four years. (Tr. 534-36.)[3] During this period, the doctor prescribed a back brace and two knee braces to help manage the plaintiff's pain and help him walk.[4] The plaintiff's right shoulder did not improve with conservative treatment, so he had rotator cuff surgery on April 30, 2015. (Tr. 628-32, 742-43).

In addition to the pain in his leg, neck and back, the plaintiff had pain, tenderness and decreased range of motion in both knees in 2015 and 2016. (Tr. 834.) Dr. Clarke recommended

---

[3] An occupational therapist, Dr. Michael Hearns, agreed that the plaintiff was temporarily disabled and referred the plaintiff to a chiropractor and acupuncturist. (Tr. 563.)

[4] On February 19, 2015, the plaintiff was hospitalized after suffering a myocardial infarction. (Tr. 426-435.) His doctors determined that he could not continue receiving steroid injections as part of his pain management plan because they had caused his blood pressure to spike. (Tr. 149, 825.)

6

that he continue conservative treatment. Although the plaintiff's shoulder was better after the surgery, he still had decreased range of motion, pain, tenderness and muscle spasms in his neck, shoulder, knees and back through 2017, and still could not lift his arm above eye level. (Tr. 110, 858-59, 866-67.) Doctors evaluated him to see if he was a candidate for spinal surgery, but the plaintiff decided to forego invasive spinal surgery and continue with conservative treatment. (Tr. 825, 851-57.)

In the ALJ's view, Dr. Clarke's opinion merited only "partial weight" or "no weight." (Tr. 120.) She agreed that "his opinions that the claimant's severe impairments result in functional limitations are generally supported by the record," but that "[m]ore weight cannot be accorded as the medical evidence does not support such significant limitations[.]" (Tr. 120.) This was error.[5] Contradictory evidence must be "overwhelmingly compelling in order to overcome a medical opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (citations and quotations omitted). That standard was not met here. Dr. Clarke evaluated the plaintiff's progress over the course of four years and found that the plaintiff had limited motion, diminished reflexes and was not improving with conservative treatment. The plaintiff's complaints of pain were supported by objective medical findings, including nerve conduction studies and physical examinations. Moreover, the ALJ's finding that Dr. Clarke did not provide "specific opinions regarding the claimant's abilities in performing basic work functions" (Tr. 120) is refuted by the record, which shows that Dr. Clarke repeatedly assessed the plaintiff's limitations on sitting, standing, walking, lifting and carrying; indeed, those assessments formed the basis for the

---

[5] The ALJ did not have to give weight to Dr. Clarke's statements about the plaintiff's disability or his eligibility for worker's compensation. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("The ultimate finding of whether a claimant is disabled and cannot work" is to be made by the ALJ, and "[a] treating physician's statement that the claimant is disabled cannot itself be determinative."). On the other hand, the fact that Dr. Clarke evaluated the plaintiff for worker's compensation purposes, or assessed his disability status, is not a reason, by itself, to give his opinion less than controlling weight.

7

doctor's opinion that the plaintiff could not engage in even sedentary work. (Tr. 502-91, 642-45, 713-27, 858-75, 879.) Those findings were consistent with the evaluations by other physicians, who concluded the plaintiff was partially or completely disabled, could not lift, push, or pull, and that he needed additional orthopedic care and physical therapy. (Tr. 557, 562-66, 755-59, 772-76.)

The ALJ appears to have given "partial weight" or "no weight" to every medical opinion on the record—including Dr. Clarke's and the consultative examiner's opinions—but did not find that any conflicting opinion deserved controlling weight. As a result, the ALJ reached her RFC determination by citing doctors to whose opinions she assigned partial weight; but none of these doctors concluded that the plaintiff had the residual functional capacity to perform light work. (Tr. 120.) "In the absence of a medical opinion to support the ALJ's finding . . . it is well-settled that the ALJ cannot arbitrarily substitute [her] own judgment for competent medical opinion . . ." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quotation and citation omitted); *see also Filocomo v. Chater,* 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in [her] own evaluations of the medical findings."). Remand is necessary for the ALJ to reconsider Dr. Clarke's medical opinion and the weight it merits.

The plaintiff also claims the Appeals Council should have remanded so that the ALJ could consider the additional evidence supporting Dr. Clarke's opinion—his testimony at the plaintiff's workers compensation hearing, and the testimony of Dr. Alvarez, a retired physician who evaluated the plaintiff in connection with the worker's compensation eligibility determination. He argues that these records are a critical part of his medical record, and that Dr. Alvarez's testimony supports Dr. Clarke's opinion.

8

A court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" 42 U.S.C. § 405(g). Evidence is "new" if the Commissioner has not considered it previously and it is "not merely cumulative of what is already in the record." *Corona v. Berryhill*, No. 15-CV-7117, 2017 WL 1133341, at *19 (E.D.N.Y. Mar. 24, 2017) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)). "New evidence is considered material if (1) it is 'relevant to the claimant's condition during the time period for which benefits were denied,' (2) it is 'probative,' and (3) there is 'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide the claimant's application differently.'" *Id.* (quoting *Williams v. Comm'r of Soc. Sec.*, 236 F. App'x 641, 644 (2d Cir. 2007) (citation omitted)).

There is no question that the evidence is new, since it did not exist when the ALJ made her decision. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004).[6] The only question is whether the records are material. I find that they are, and that remand is appropriate so that the ALJ can consider these additional records in evaluating the plaintiff's RFC.

The plaintiff submitted Dr. Clarke's progress reports from 2017 and 2018, as well as his and Dr. Alvarez's 2017 testimony at the worker's compensation hearing. (Tr. 2, 8-11, 14-103.) These records are undoubtedly material. The Appeals Council declined to review them because they were prepared after the relevant period, but "a retrospective opinion of a treating physician is highly probative, and the mere fact that it was made months after the relevant period is

---

[6] In any event, a good cause showing is not required here because the records became part of the administrative record when they were submitted to the Appeals Council. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review); *see* 20 C.F.R. §§ 404.970(b), 416.1470(b) (authorizing claimants to submit new evidence to the Appeals Council without a "good cause" requirement).

9

insufficient reason to disregard it." *Maloney v. Berryhill*, No. 16-CV-3899, 2018 WL 400772, at *5 (E.D.N.Y. Jan. 12, 2018). Dr. Clarke treated the plaintiff for four years; his updated progress notes and deposition testimony are consistent with the record and describe the progression of the plaintiff's condition. They include important observations about the plaintiff's physical conditions and daily activities: for example, Dr. Clarke noted that the plaintiff "spends most of the day lying in the couch, or sitting in a reclined position," that he could not lift or walk without assistance—both work-related activities—that he was still being treated for pain, weakness and limited range of motion in 2017 and 2018, and that he was a candidate for spinal surgery because of the severity of his condition. (Tr. 8-11, 20-21.)

The doctors' deposition testimony was also highly material to evaluating the plaintiff's physical condition and his RFC. At his deposition, Dr. Clarke observed that the plaintiff had been treated with "interventional pain management, epidural injections, oral pain management, pain medications, anti-inflammatories and muscle relaxants . . . acupuncture, chiropractic, physical therapy and these treatments have failed to resolve the causally related medical conditions." (Tr. 21.) He also observed that the plaintiff "consistently reports that his pain and impairment makes [*sic*] it almost impossible for him to walk a full block, almost impossible for him to lift 10 pounds even at one instance, almost impossible for him to sit for a half hour . . . and . . . make it impossible for him to dress himself and . . . to concentrate." (Tr. 32-33.) The plaintiff's inability to concentrate, dress himself or to walk or stand for prolonged periods of time led Dr. Clarke to conclude that "he's not able to engage in any form of gainful employment." (Tr. 33.) While Dr. Alvarez reached a less conservative conclusion about the plaintiff's disability status, he also opined that the plaintiff had a "marked disability," (Tr. 92), could not drive a car, and could work only in a restricted sedentary capacity. (Tr. 80-82.) He also

recommended that the plaintiff have spinal surgery because of the severity of his condition. (Tr. 88-89.)

The new evidence lends credibility to the plaintiff's claims that his back, shoulder and neck pain limited his daily activities, and could very well have led the ALJ to reach a different RFC conclusion. *See Lopez v. Astrue*, No. 09-CV-1678, 2011 WL 6000550, at *10-12 (E.D.N.Y. Nov. 28, 2011) (new records which have a reasonable possibility of affecting the analysis of credibility are material). Because there is a reasonable possibility the evidence "would have influenced the [Commissioner] to decide the claimant's application differently," *Williams*, 236 F. App'x at 644, the Appeals Council should have remanded for the ALJ to consider these records. *Id.; see also Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991).

Finally, the plaintiff argues that the RFC assessment is incomplete because ALJ Allen did not consider the effects of the plaintiff's knee problems and obesity on his RFC. The ALJ must assess a plaintiff's residual functional capacity "based on all the relevant evidence in the case record." *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)(1)). The assessment must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Martinez v. Colvin*, 286 F. Supp. 3d 539, 544 (W.D.N.Y. 2017) (citation omitted). The ALJ discussed both conditions at length in her decision, and remand is not appropriate on this basis. The plaintiff did not claim disability based on his knee problems. The record shows that he had normal bilateral motor strength in both knees, mild tenderness and mildly decreased range of motion, for which the ALJ properly accounted in her decision. (Tr. 116, 810, 821, 832.) Similarly, the ALJ

classified the plaintiff's obesity as a "severe" impairment and determined that the combined effects of his impairments, including his obesity, limited him to a reduced range of light work.

## II. The ALJ's Listings Analysis

The ALJ found that the plaintiff had certain severe impairments, including "status-post right shoulder surgery," degenerative disc disease of the cervical and lumbar spine with radiculopathy, diabetes, obesity, myocardial infarction, and osteoarthritis of the bilateral hips. (Tr. 109.) She decided, however, that none of these impairments met or equaled the severity of listing 1.04 generally. As explained below, remand is necessary so that the ALJ can reevaluate the evidence of the plaintiff's impairments under listing 1.04(A), and consider whether the plaintiff is eligible under listing 1.04(C), which the ALJ did not discuss.

When an ALJ finds that a claimant has a medically determinable impairment that is "severe," she must determine whether the identified "impairment(s) meets or equals a listed impairment in appendix 1." 20 C.F.R. § 404.1520(a)(4)(iii). Each impairment in the appendix "is sufficient, at step three, to create an irrebuttable presumption of disability" under the Social Security regulations. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). "The regulations also provide for a finding of such a disability *per se* if an individual has an impairment that is 'equal to' a listed impairment." *Id.* (citing 20 C.F.R. 404.1520(d) ("If you have an impairment(s) which . . . is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.")).

A district court must remand if the ALJ does not explain why she reached a particular decision. *See Estrada ex rel. E.E. v. Astrue*, No. 08-CV-3427, 2010 WL 3924686, at *3 (E.D.N.Y. Sept. 29, 2010) (remand is appropriate "[i]n circumstances . . . where the ALJ has

stated no findings or conclusions with respect to a claim of disabling impairment, especially one to which the claimant arguably has demonstrated the symptoms described . . .") (citation and quotations omitted); *see also Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Remand is particularly appropriate where . . . we are 'unable to fathom the ALJ's rationale in relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'") (citations omitted); *Wong v. Astrue*, No. 06-CV-2949, 2010 WL 1268059, at *10 (E.D.N.Y. Mar. 31, 2010) (case remanded where ALJ provided insufficient explanation for conclusion that plaintiff did not meet or equal a listing, where evidence suggested plaintiff met listing criteria).

Under listing 1.04(A), a claimant is presumptively disabled if he has "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture[ ], resulting in compromise of a nerve root . . . or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).

Without specifying which part of listing 1.04 she evaluated, ALJ Allen concluded that the plaintiff did not meet these requirements because there was no evidence of nerve root compression, sensory or reflex loss or positive straight leg raising tests. (Tr. 110.) However, there was ample evidence that the plaintiff had "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). MRI imaging two months after his 2014 accident

showed multiple herniated, torn and bulging discs in the plaintiff's lumbar and cervical spine impinging on neural foramina at the L5-S1, L3-L4, and L4-L5 levels, including "[c]ontact with the exiting left-sided L5 spinal nerve." (Tr. 365-66, 368-70.) Later imaging showed additional encroachment on the L4 and L5 nerve roots. (Tr. 813-14.) The plaintiff complained of numbness and weakness (Tr. 548, 642, 653, 726), complaints which were verified by physical examinations (Tr. 699-701, 809-810, 876-77) and nerve conduction tests that showed cervical and lumbar radiculopathy and bilateral nerve entrapment in both wrists. (Tr. 371-72.)[7] Dr. Clarke and Dr. Alvarez verified these findings in their September 2017 deposition testimony; they discussed at length the plaintiff's sensory loss and his complaints of numbness and weakness, as well as imaging showing impinged nerve roots. "It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a [l]isting is deemed disabled *per se* and eligible to receive benefits." *Szarowicz v. Astrue*, No. 11-CV-277S, 2012 WL 3095798, at *5 (W.D.N.Y. July 30, 2012). Remand is therefore appropriate so that the ALJ can reconsider whether the plaintiff meets the requirements under listing 1.04(A).

Under listing 1.04(C)—the second listing the plaintiff says the ALJ should have considered—a claimant must establish "lumbar spinal stenosis resulting in pseudoclaudication[8], established by . . . medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively. . ." 20 C.F.R. Pt. 404, Subpt. P,

---

[7] The ALJ concluded that the plaintiff was ineligible under the listing because his straight-leg raising tests have "generally been negative," but many of the plaintiff's straight-leg raising tests appear to have been positive. (Tr. 535, 713, 503-04, 548-50, 721-22, 870-73.)
[8] Pseudoclaudication is pain and discomfort in the lower back, buttocks, or thighs, which may result from lumbar spinal stenosis. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.04C.

14

App'x 1, § 1.04(C).[9] The ALJ did not consider this listing at all in her analysis, although the plaintiff used a cane and there was evidence that he had lumbar spinal stenosis.[10] (Tr. 357-58, 654, 658, 662, 667, 790, 811, 822.) This was error. "Although it may be the case that the ALJ would ultimately have decided that [the] plaintiff's impairment did not meet or equal the requirements of [the listing], this possibility does not relieve the ALJ of his obligation to discuss the potential applicability of [the listing], or at the very least, to provide [the] plaintiff with an explanation of his reasoning as to why [the] plaintiff's impairment did not meet any of the listings." *Norman v. Astrue*, 912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012) (quotation and citation omitted). The evidence suggests that the plaintiff may meet some of the conditions of this listing. On appeal, the parties disagree about the degree to which the plaintiff can walk, or whether one physician's finding of "neurogenic claudication" satisfies listing 1.04(C)'s pseudoclaudication requirement, but this Court cannot resolve those disputes.[11] *See Norman v. Astrue,* 912 F. Supp. 2d 33, 79 (S.D.N.Y. 2012) (noting that "it is not for [the Court] to reconcile conflicting medical evidence in the record—that is the obligation of the ALJ.") The ALJ is in the best position to consider the conflicting evidence and determine the extent to which the plaintiff satisfies the remaining conditions of both listings. In addition to re-evaluating the evidence before her, on remand, the ALJ should consider the extent to which the new deposition testimony and progress notes from Dr. Clarke and Dr. Alvarez support a finding under both listings.

---

[9] Inability to ambulate effectively is defined as "an extreme limitation of the ability to walk." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00B2b.

[10] While use of a single cane is usually not sufficient under listing 1.04(C), the plaintiff appears to have had difficulty walking with a single cane and frequently fell.

[11] Dr. Clarke also testified that the plaintiff complained of numbness in the buttock and leg, which also appears to be consistent with pseudoclaudication. (Tr. 22.)

## CONCLUSION

Accordingly, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's cross-motion is denied, and the case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
      March 31, 2020